In re Richard Thomas COOKE, Debtor.

Bankruptcy No. 92–54150.

United States Bankruptcy Court,
D. Connecticut.

Nov. 15, 1993.

E. Huntington Deming, Timothy D. Miltenberger, Coan, Lewendon and Royston, New Haven, CT, for movant.

Matthew K. Beatman, Zeisler & Zeisler, P.C., Bridgeport, CT, for debtor.

## MEMORANDUM AND ORDER ON MOTION TO DISQUALIFY

ALAN H.W. SHIFF, Bankruptcy Judge.

### BACKGROUND

The debtor, Richard Thomas Cooke, commenced this chapter 11 case on December 15, 1992. On February 17, 1993 Maryalice K. Cooke (the "movant"), the debtor's former wife, filed a motion seeking a modification of the automatic stay to permit her to pursue certain actions against the debtor in the state court. On February 23, 1993, the first hearing in this case was scheduled to consider the application of Zeisler & Zeisler, P.C., for approval to serve as the debtor's counsel.

Although her motion to modify the automatic stay was not scheduled for hearing until March 16, 1993, the movant appeared *pro se* on February 23, 1993 and attempted to prosecute that motion. At that hearing, I

appointed attorney Joel M. Grafstein to represent the movant. I also disclosed on the record at that hearing, in the presence of the movant, her attorney, and the debtor's counsel, that both the movant and the debtor were social acquaintances of mine. I told the parties that if either of them objected to my presiding over this case on that basis, they should make that fact known. I received no such objection and determined, without issuing an order, that applicable law did not require my recusal from this case. I therefore expedited the hearing on the movant's motion for modification of the automatic stay and an order granting that relief entered on February 26, 1993.

At the August 24, 1993 hearing on the debtor's disclosure statement, the movant stated for the first time her request that I recuse. I directed her to file a motion to that effect and an affidavit stating the facts she relied upon in support of that motion. On September 7, 1993, the movant filed the instant motion with a supporting affidavit (the "Affidavit").

## DISCUSSION

28 U.S.C.A. § 455 (West 1993), made applicable by Rule 5004(a), Fed.R.Bankr.P., provides in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....[1]

■ The presiding judge has discretion to decide whether disqualification is required. *Securities and Exch. Comm'n v. Drexel Burnham Lambert Inc. (In re Drexel Burn-*

*ham Lambert Inc.),* 861 F.2d 1307, 1312 (2d Cir.1988), *rehearing denied en banc,* 869 F.2d 116, *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). The judge's impartiality is presumed in the absence of adequate proof to the contrary. *Wolfson v. Palmieri,* 396 F.2d 121, 126 (2d Cir.1968).

■ In considering motions to disqualify, the presiding judge must exercise care to insure that disqualification is objectively required and not to permit litigants to select another judge for inappropriate motives.[2] In that regard, a judge must not permit the mere allegation of partiality to result in the automatic reassignment of a case.

> In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge; not to a judge of their choosing. A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.

*In re Drexel Burnham Lambert Inc., supra,* 861 F.2d at 1312 (citation omitted). *See United States v. Wallach,* 788 F.Supp. 739, 741 (S.D.N.Y.) ("Unless there is good reason to recuse, a district judge ought *not* to recuse himself."), *aff'd,* 979 F.2d 912 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993); *McCann v. Communications Design Corp.,* 775 F.Supp. 1506, 1508–09 (D.Conn.1991) ("Where there is no basis for recusal other than a litigant's unhappiness with a judge's decisions, the presiding judge has an obligation to prevent 'judge shopping' by refusing to recuse himself.").

---

1. While the movant seeks my disqualification under § 455(a) only, I also address the requirements of § 455(b)(1) because certain allegations contained in the motion and Affidavit might be construed to suggest that I have obtained extrajudicial information concerning disputed issues in this case. *See infra,* section II.C. There is no allegation of actual bias or prejudice on my part for or against either the debtor or the movant.

2. The Second Circuit has continued to emphasize the trial judge's duty not to recuse where the facts do not objectively require it under § 455, while recognizing that Congress eliminated the so-called "duty to sit" concept from that statute. *See United States v. Lovaglia,* 954 F.2d 811, 814–15 (2d Cir.1992).

## I. Timeliness

A motion to disqualify under § 455 will not be granted where it is not timely made. *United States v. Int'l Business Machs. Corp. (In re Int'l Business Machs. Corp.)*, 618 F.2d 923, 932 (2d Cir.1980). Such a motion "must be made 'at the earliest possible moment' after obtaining information of possible bias." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir.1991) (quoting *Apple v. Jewish Hosp. & Medical Center*, 829 F.2d 326, 333 (2d Cir.1987)); *see also Ivy v. Diamond Shamrock Chemicals Co. (In re "Agent Orange" Product Liability Litigation)*, 996 F.2d 1425, 1439 (2d Cir. 1993).

> The timeliness requirement is necessary to prevent waste of judicial resources and to ensure that a movant does not "hedg[e] its bets against the eventual outcome" of a proceeding. *Apple*, 829 F.2d at 334. In fact, "a judge has an affirmative duty ... not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'" *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir.1978) (quoting *Rosen, [v. Sugarman ]*, 357 F.2d [794,] at 797–98 [2nd Cir.1966]), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

*Yonkers Bd. of Educ., supra*, 946 F.2d at 183 (citation omitted).

> The purpose of a timeliness requirement for the assertion of claims of personal bias is to prevent a litigant from using motions to disqualify as dilatory tactics or as means to "sample the temper of the court" before deciding whether to raise an issue of disqualification or to ambush a court that is on the verge of 'acting—possibly to his detriment—on matters he deems important.

*Martin–Trigona v. Lavien (In re Martin–Trigona)*, 573 F.Supp. 1237, 1245 (D.Conn.

1983) (citation omitted), *appeal dismissed*, 770 F.2d 157 (2d Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

In deciding whether a motion to disqualify is timely, the court must consider a number of factors, including (1) whether the movant has participated in the proceeding in a substantial way; (2) whether the granting of the motion would result in a waste of judicial resources; (3) whether the motion was made after the entry of judgment; and (4) whether the movant can demonstrate good cause for the delay. *Apple v. Jewish Hosp. & Medical Center, supra*, 829 F.2d at 334. Even a short delay may result in a finding of untimeliness where the movant, knowing the facts on which the motion to disqualify will be predicated, fails to file that motion while the court continues to hear and decide matters arising in the case. *See id.* (delay of two months in filing recusal motion after movant learned of facts allegedly requiring recusal rendered motion untimely); *Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 871–72 (9th Cir.1991) (delay of six weeks in filing recusal motion, during which time judgment entered, rendered motion to disqualify untimely), *cert. denied*, —— U.S. ——, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL–CIO*, 814 F.Supp. 1165, 1172 (S.D.N.Y.1993) (delay of two months after discovery of relevant facts rendered motion untimely); *In re Martin–Trigona, supra*, 573 F.Supp. at 1244–45 (delay of 12 days from the time movant indicated probability of recusal motion to time motion was actually filed was excessive where court heard some matters and scheduled others in the interim).

As noted, the petition was filed on December 15, 1992. There is no allegation in the Affidavit that any of the facts which allegedly disqualify me from acting in this case were not known to the movant on that date.[3] At the first hearing in this case on February 23, 1993, I directed both the mov-

---

3. The movant does not specify when she discovered that the debtor's counsel is my former law clerk. *See* Affidavit at ¶ 9. That fact is well known to the bankruptcy bar, and is in any event not a sufficient ground to require my disqualifi-

cation. The other events or conditions alleged in the Affidavit, to the extent they are accurate, occurred or existed before the commencement of this case.

ant and the debtor's counsel to decide if they were going to ask me to disqualify myself.[4] The movant has participated in this case in a substantial way since that date. No disqualification motion was made at the February 24, 1993 hearing on the movant's motion to modify the stay. In fact it was not until the hearing on the debtor's disclosure statement on August 24, 1993, some six months after the first hearing in the case and over eight months after the petition was filed, that the movant orally requested that I disqualify myself.

I have entered many orders during that period, hearings on a critical valuation motion and on the confirmation of the debtor's plan were scheduled to occur September 24, 1993, and judicial resources would be wasted if this case is transferred. Moreover, no cause has been offered for the delay. Indeed, the delay suggests that the movant believed my impartiality could not reasonably be questioned at the inception of this case, and nothing other than my presiding over and entering orders in this case could have changed that belief.[5] Under the foregoing circumstances, the instant motion cannot be considered timely.

## II. Disqualification

■ When a judge's impartiality is questioned, the merits of the challenge should be addressed even if that challenge is not timely. *Lamborn v. Dittmer*, 726

---

**4.** Attorney Joel M. Grafstein was appointed as the movant's counsel at the first scheduled hearing in this case. He filed an appearance on February 26, 1993. Attorney E. Huntington Deming, who now represents the movant, filed an appearance on July 22, 1993.

**5.** The Second Circuit has recognized that a judge's conduct of the proceedings could conceivably require disqualification under § 455(a), though not under § 455(b)(1). *Compare United States v. Coven*, 662 F.2d 162, 168 (2d Cir.1981) (disqualifying bias under § 455(a) need not spring from an extrajudicial source), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982) *with In re Int'l Business Machs. Corp.*, *supra*, 618 F.2d at 929 ("[U]nder section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings.") (footnote omitted). However, there is no allegation here

---

F.Supp. 510, 515 (S.D.N.Y.1989). I find that the motion, even if timely, lacks merit.

> Under § 455(a),
>
> the test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts* .... [J]udges determine appearance of impropriety—not by considering what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge....

*In re Drexel Burnham Lambert Inc.*, *supra*, 861 F.2d at 1313 (emphasis in original) (citations omitted). In *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992), the Second Circuit rephrased the standard as: "[W]ould an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" Section 455(a) thus requires recusal where there is the appearance of partiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988).

■ In order to apply the § 455(a) standard, it must first be shown that an allegation is true. A judge is not required to accept the factual allegations of a party moving for recusal under § 455(a). *Farkas v. Ellis*, 768 F.Supp. 476, 480 (S.D.N.Y.1991); *United States v. Kehlbeck*, 766 F.Supp. 707, 712 (S.D.Ind.1990).[6]

---

of any in-court conduct or rulings that would mandate my disqualification.

**6.** It is noted that where a motion is filed under 28 U.S.C.A. § 144 (West 1993), requiring a district court judge to recuse upon the filing of "a timely and sufficient affidavit that the judge ... has a personal bias or prejudice either against [the movant] or in favor of any adverse party," the facts contained in the accompanying affidavit must be accepted as true by the judge, and for that reason the allegations in a § 144 affidavit must be pleaded with particularity. *See United States v. Kehlbeck*, *supra*, 766 F.Supp. at 709–710. Even if § 144 applies to bankruptcy judges, the movant does not bring this motion under that statute, and the motion would in any event be defective under that statute as it is not accompanied by the required certificate of counsel stating that the affidavit is made in good faith.

■ In the Affidavit, the movant claims that she, the debtor, and my wife and I traveled and socialized together; that the debtor and I are members of the same social club; that she and my wife played tennis together; that she has discussed her divorce from the debtor with my wife; that I am acquainted with her uncle who is a judge; and that my former law clerk is the debtor's attorney.

There is no truth to the allegation that I am acquainted with the movant's uncle; in fact, I have never met him. Nor is there any truth to the allegation that the movant has discussed her divorce with my wife. While there is a modicum of truth to the other allegations, the implication is that because of the existence of the circumstances recited in the allegations, there is a relationship between the movant and the debtor and my wife or myself. There is not one scintilla of truth to that claim. I have reviewed and investigated the allegations of the movant in support of her motion and have responded to each such allegation on the record. The facts as I have stated them on the record do not even colorably require recusal.

## A. Social Relationship

As is apparent from my statement on the record responding to the specific allegations in the Affidavit, my wife and I are at most casual social acquaintances of the debtor and the movant. I have never been to their home and they have never been to mine. No reasonable, disinterested person knowing the facts as I have described them on the record would entertain any doubt about my ability to remain fair and impartial in this case.

■ The law is well settled that "a judge's mere acquaintance with a party or witness is not sufficient to call into question that judge's impartiality." *United States v. Kehlbeck, supra,* 766 F.Supp. at 712 (fact that judge was socially acquainted with defendant did not require disqualification); *see United States v. Dandy,* 998 F.2d 1344, 1349–50 (6th Cir.1993) (judge's social acquaintance with owners and president of allegedly defrauded company did not require judge's recusal from criminal prosecution); *Parrish v. Bd. of Comm'rs of the Alabama State Bar,* 524 F.2d 98, 104 (5th Cir.1975) (fact that

judge was acquainted with some defendants, witnesses and defense counsel did not require recusal), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Sexson v. Servaas,* 830 F.Supp. 475 (S.D.Ind.1993) (judge's membership in civic organizations and acquaintance with mayor, a defendant in his official capacity, and other nominal parties or potential witnesses, did not require recusal); *TV Communications Network, Inc. v. ESPN, Inc.,* 767 F.Supp. 1077, 1079–80 (D.Colo.1991) (mere allegation of social relationship between judge and one owning an interest in a party is not sufficient to require disqualification); *Clay v. Doherty,* 608 F.Supp. 295, 300 (N.D.Ill.1985) (judge's acquaintance with witness, consisting of sporadic social encounters and where neither judge nor witness had been a guest in the other's home, did not require recusal); *United States v. Conforte,* 457 F.Supp. 641, 646, 659 (D.Nev.1978) (disqualification not required under § 455(b)(1) even though judge and movant had met and talked on some 28 social occasions), *aff'd in relevant part,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

A judge is neither required nor encouraged to forego social interaction and involvement upon assuming his or her office. As noted in the commentary to Canon 5A of the Code of Conduct for United States Judges: "Complete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives." *See Sexson v. Servaas, supra,* 830 F.Supp. at 482 ("Merely knowing other persons ... [including party and potential witnesses], and being associated with them can take place in many ways, and that alone creates neither an impropriety nor an appearance of partiality. Indeed, aside from relegating judges to an existence akin to that of a monk, they are unavoidable.") (footnote omitted).

> To recuse oneself based on ... a slight association would be unfair to my colleagues and to the public. It also would invite many unwarranted motions of a similar type whenever a judge assigned to a

case has had some prior relationship with any of the parties before him.

*Warner v. Global Natural Resources PLC,* 545 F.Supp. 1298, 1302 (S.D.Ohio 1982).

Further, as noted and explained on the record, even the casual contacts referred to in the Affidavit occurred several years ago. The Second Circuit has affirmed a district judge's decision not to recuse where his social relationship with alleged victims of the defendant's misconduct had terminated some seven or eight years earlier, even though the judge had been by his own characterization "very close socially" with those victims. *United States v. Lovaglia, supra,* 954 F.2d at 814, 815–17.[7] *See also In re Allied–Signal, Inc.,* 891 F.2d 974, 976 (1st Cir.1989) (series of social and business relationships including loan to judge from plaintiff's counsel did not require recusal where relationships had terminated more than eight years earlier).

### B. Former Law Clerk as Debtor's Counsel

The debtor's attorney served as my law clerk from November 18, 1991, through November 20, 1992. That clerkship terminated before this case was commenced.

■ The fact that a judge's former law clerk is representing a party in a case before the judge is not sufficient to make a reasonable person question the judge's impartiality. *Wolfson v. Palmieri, supra,* 396 F.2d at 123–24 (under the version of § 455 then in effect, the judge's decision not to recuse from criminal case where former law clerk was assistant prosecutor was "so plainly right as to require no discussion"); *United States v. Bosch,* 951 F.2d 1546, 1548–49 (9th Cir.1991) (failure to recuse where prosecutor was former law clerk was not plain error where there was no demonstration of bias), *cert. denied,* —— U.S. ——, 112 S.Ct. 2975, 119

L.Ed.2d 594 (1992); *United States v. Hollister,* 746 F.2d 420, 425 (8th Cir.1984) (district court did not err in declining to recuse where former law clerk became prosecutor in case some three months after completing clerkship); *Varela v. Jones,* 746 F.2d 1413, 1415–17 (10th Cir.1984) (district judge did not abuse discretion in failing to recuse from case in which former law clerk was one of defendant's trial counsel and had handled probate of judge's mother's estate); *Cheeves v. Southern Clays, Inc.,* 726 F.Supp. 1579, 1581–82 (M.D.Ga.1990) (recusal not required where counsel for party had recently been judge's law clerk, but law clerk had not worked on the case prior to leaving clerk position); *Smith v. Pepsico, Inc.,* 434 F.Supp. 524, 525–26 (S.D.Fla.1977).

■ The law governing disqualification in three analogous situations further demonstrates the propriety of my decision not to recuse based on my former law clerk's involvement in this case. First, a judge need not recuse from a case when his or her law clerk receives an offer of employment from a law firm which is handling a case before the judge, although the law clerk should thereafter be precluded from working on that case. *Bartel Dental Books Co., Inc. v. Schultz,* 786 F.2d 486, 490 (2d Cir.), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 713 (1986); *Hunt v. Am. Bank & Trust Co. of Baton Rouge, La.,* 783 F.2d 1011, 1015–16 (11th Cir.1986); *cf.* Rule 1.12, Conn.Rules of Prof.Conduct (1992), Rule 3(a), Local Rules of Civil Procedure (D.Conn.1992) (lawyer may not handle matter in which he participated "personally and substantially" while a law clerk). My former law clerk could not have worked on this case or had any knowledge of it until after he left that position.

---

**7.** The court in *Lovaglia* stated in dicta that "disqualification could be warranted if a judge has had contemporaneous extrajudicial contact with a close relative of a party who has personal knowledge of outcome-determinative facts," 954 F.2d at 815, citing to *In re Faulkner,* 856 F.2d 716, 721 (5th Cir.1988) (per curiam). In *Faulkner,* a criminal case, the judge's first cousin was "an important participant in key transactions forming the basis of [the] indictment," and had communicated material facts involved in the case

and her opinions regarding those facts to the judge. 856 F.2d at 721. Those extensive extrajudicial contacts, which resulted in the judge obtaining information regarding outcome-determinative facts, in no way compare to the "remote, contingent, indirect or speculative interests," *Lovaglia, supra,* 954 F.2d at 815, alleged by the movant in this case. The movant has not alleged, and I am not aware of any, contemporaneous extrajudicial contact with the debtor or the movant.

■ Second, a judge's friendship with counsel appearing before him or her does not alone mandate disqualification. *Henderson v. Dep't of Public Safety and Corrections,* 901 F.2d 1288, 1295–96 (5th Cir.1990) (sanctions were properly imposed against attorney moving for recusal of trial judge on ground that judge was friend of opposing counsel and opposing counsel's father; noting that bias for or against counsel does not require disqualification unless it also indicates bias for or against a party); *see also United States v. Murphy,* 768 F.2d 1518, 1537 (7th Cir.1985) ("In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable."), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). A judge's friendship with a lawyer appearing before the judge does not give rise to an appearance of partiality unless that friendship "is very much out of the ordinary course, and ... presents a potential for actual impropriety if the worst implications are realized." *Id.* at 1537 (judge should have recused from a case where the judge and the prosecuting attorney were "the best of friends" and the judge advanced the sentencing date so that he and his family could go on a vacation with the prosecuting attorney and his family). There is no social relationship between my former law clerk and myself.

■ Third, the fact that a lawyer appearing before a judge is associated with a law firm, with which the judge was associated before appointment to the bench, does not without more require the judge's disqualification. *See In re Norton,* 119 B.R. 332, 338 (Bankr.N.D.Ga.1990); *Smith v. Pepsico, Inc., supra,* 434 F.Supp. at 525; *but cf.* 28 U.S.C.A. § 455(b)(2) (West 1993) (a judge must recuse from a matter where the judge or the judge's former law firm served as counsel in the matter while the judge was associated with the firm); 1 Compendium of Selected Opinions, Committee on Codes of Conduct of the Judicial Conference of the United States § 3.3–1(b) (1993) (a judge must recuse in all cases handled by the judge's former law firm until all payments due from the firm to the judge have been received, and for a reasonable period of time thereafter). The relationship between a judge and law clerk is a professional relationship not unlike the one that exists among lawyers in the same firm, with the important distinction that the judge-law clerk relationship does not involve the financial interdependency inherent in the law firm relationship. As noted, this case was not before me during the debtor's counsel's tenure as my law clerk.

## C. Section 455(b)(1)

■ A determination of bias under § 455(b)(1) must be based on extrajudicial conduct rather than conduct arising during the course of the proceeding. *In re Drexel Burnham Lambert Inc., supra,* 861 F.2d at 1314. Adverse rulings and legal disagreements with counsel are not sufficient to require the presiding judge's disqualification. *Id.* "A judge must be free to make rulings on the merits without the apprehension that if he makes a decision, even a disproportionate number of decisions, in favor of one litigant, he may have created the impression of bias." *McCann v. Communications Design Corp., supra,* 775 F.Supp. at 1522.

■ The movant has not alleged actual bias or prejudice, nor are there any facts which support such an allegation. Further, I have no knowledge regarding any facts in this case or any proceeding within this case, except facts that have been disclosed during the course of the administration of this case. Knowledge of disputed evidentiary facts is disqualifying only when derived from an extra-judicial source. *United States v. Coven,* 662 F.2d 162, 168 (2d Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982); *see also Bilello v. Abbott Lab.,* 825 F.Supp. 475, 480–81 (E.D.N.Y.1993) (facts learned by judge during settlement discussions are not disqualifying).

## ORDER

Having concluded that the instant motion was not timely made, and moreover that a reasonable person knowing and understanding all of the relevant facts would not doubt my impartiality, and having found no other ground for disqualification, I decline to dis-

qualify myself.[8] The motion is denied, and IT IS SO ORDERED.

---

8. At the September 24, 1993, hearing on this motion, the movant's counsel made an oral motion that I recuse myself from an adversary proceeding filed by the movant against the debtor. Counsel was apparently referring to Adversary Proceeding No. 93–5069, an action under § 523. While counsel indicated that the complaint in that action had only recently been served, that reference appears to have been to service of an amended complaint; the original complaint was filed on March 25, 1993, some five months prior to the movant's first suggestion that I should disqualify myself from this case. While it may under some circumstances be appropriate for a bankruptcy judge to recuse from only certain proceedings in a case, as where a disqualifying circumstance exists with only a certain creditor involved in a particular proceeding, see Rule 5004(a), Fed.R.Bankr.P.; In re Norton, supra, 119 B.R. at 339–40, my recusal from the referenced adversary proceeding is neither required nor appropriate. Even though my recusal from that proceeding might not be a waste of judicial resources, the recusal motion has been unduly delayed. Moreover, even if that recusal motion had been timely, for the same reasons that I need not recuse from the case, I need not recuse from the adversary proceeding. No reasonable, disinterested observer knowing the facts would doubt my ability to fairly and impartially preside over that proceeding and to judge the credibility of the movant and debtor should either or both of them testify in it.